UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CALVIN EUNICE MARSHALL,

        Plaintiff,

v.

UNKNOWN WONNACOTT et al.,

        Defendants.

_____/

Case No. 2:25-cv-102

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's claims for declaratory and injunctive relief, as well as his Fourteenth Amendment due process claims. Plaintiff's Eighth Amendment claims for damages against Defendants remain in the case. The Court will also deny Plaintiff's "motion for immediate consideration" (ECF No. 3), which the Court has construed as a motion for preliminary injunctive relief.

**Discussion**

I.   **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF personnel in their personal capacities: Warden James Corrigan, Unknown Deputy Warden, Unit Counselor Unknown Wonnacott, and Resident Unit Manager Unknown Spiker.

Plaintiff alleges that on November 6, 2024, he saw Michigan Parole Board member Brian Shipman and was granted parole. (Compl., ECF No. 1, PageID.4.) Plaintiff received the notice of action regarding parole on November 19, 2024. (*Id.*) Plaintiff received another copy of the notice of action on November 22, 2024, in which Plaintiff's "outdate" was listed as March 25, 2025. (*Id.*, PageID.5.) Plaintiff was working as a wheelchair pusher and was not in his cell at the time, so an officer placed the notice of action in Plaintiff's cell, where Plaintiff's cellmate read it. (*Id.*)

Plaintiff alleges that several inmates started approaching him about selling his property because he was getting parole, and Plaintiff refused their requests. (*Id.*) In return, Plaintiff was threatened by several inmates. (*Id.*) Plaintiff approached Defendant Wonnacott and asked him about moving to the other side of Level II; Defendant Wonnacott told Plaintiff "no." (*Id.*)

On December 2, 2024, all named Defendants were in Plaintiff's housing unit. (*Id.*) Plaintiff approached them and explained the situation that he was experiencing with inmates threatening him because of his approaching parole date. (*Id.*) Plaintiff asked to be moved to another unit; Defendants told him "no." (*Id.*)

Four days later, on December 6, 2024, Plaintiff was assaulted by his cellmate. (*Id.*) Plaintiff tried to run out of his room, and his cellmate pulled him back in. (*Id.*) As a result, Plaintiff received a misconduct ticket for fighting. (*Id.*)

On December 19, 2024, Defendant Unknown Deputy Warden contacted the Parole Board, stating that Plaintiff was "not ready to[] parole" and requesting that the parole determination be reconsidered. (*Id.*)

On January 13, 2025, Plaintiff saw Parole Board member Paula Johnson, but Defendants Unknown Deputy Warden and Corrigan "got to[] her." (*Id.*) Plaintiff claims that he was "railroaded" and that on March 18, 2025, seven days before he was due to be paroled, he received notice that his consideration for parole was being continued. (*Id.*, PageID.6.)

Based upon the foregoing, Plaintiff asserts violations of his Eighth Amendment rights, as well as his Fourteenth Amendment procedural and substantive due process rights. (*Id.*) Plaintiff seeks declaratory and injunctive relief, as well as damages. (*Id.*, PageID.10–11.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Claims for Declaratory and Injunctive Relief**

As set forth *supra*, Plaintiff seeks declaratory and injunctive relief, as well as damages. However, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained. Here, Plaintiff is no longer confined at URF, which is where he avers that Defendants are employed. Plaintiff, therefore, cannot maintain his claims for declaratory and injunctive relief, and such claims will be dismissed.

**B.    Claims for Damages**

**1.    Eighth Amendment**

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to protect him from "a threat to his mental and physical safety." (Compl., ECF No. 1, PageID.6.)

To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he

5

must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

In order to state a failure-to-protect claim, a plaintiff must show (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy*, 988 F.3d at 912 (quoting *Farmer*, 511 U.S. at 829, 834, 847); *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing whether knowing placement of a small, transgender female in a unit with a known predatory inmate amounted to deliberate indifference).

Here, Plaintiff alleges that after his cellmate read Plaintiff's notice of parole action, which indicated that Plaintiff's "outdate" was March 25, 2025, inmates in Plaintiff's housing unit began threatening him after he refused to sell his property. Plaintiff alleges that he told all named Defendants about the situation and asked to be moved to a different housing unit, but they all denied his request. Ultimately, Plaintiff was assaulted by his cellmate and ended up receiving a misconduct ticket for fighting. While Plaintiff has by no means proven deliberate indifference, taking his allegations in the light most favorable to him, as the Court must do at this stage of proceedings, the Court will not dismiss Plaintiff's Eighth Amendment claims for damages on initial review.

### 2. Fourteenth Amendment Due Process Claims

Plaintiff also contends that Defendants violated his Fourteenth Amendment procedural and substantive due process rights in two ways: (1) by recommending that his conditional grant of

parole be reconsidered; and (2) by issuing a misconduct ticket for fighting. (Compl., ECF No. 1, PageID.6.)

### a. Procedural Due Process

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

With respect to the fact that Plaintiff's conditional grant of parole was revoked, Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes*

7

*v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

The fact that the Michigan Parole Board initially set March 25, 2025, as a conditional date for Plaintiff's release on parole did not create a liberty interest in release. The Supreme Court has considered a substantially similar scenario:

> In *Jago v. Van Curen*, 454 U.S. 14, 14–18 . . . (1981), the Ohio Adult Parole Authority ("OAPA") ordered a prisoner's release on parole on a date certain. The prisoner attended and completed required prison pre-release classes. Before the prisoner was released from prison on parole, the OAPA learned that the prisoner had not been truthful in his parole interview or in the parole plan submitted to his parole officers and, therefore, rescinded its earlier release decision. The Supreme Court recognized that the new parole decision visited a "grievous loss" on the prisoner but, nevertheless, held that because the prisoner had not been physically released from prison, and because Ohio law allowed for the suspension or rescission of a projected parole release at any time before the prisoner was actually physically released, the prisoner did not have a protected liberty interest in release sufficient to invoke the procedural protections of the Due Process Clause. *Id.* at 17.

*Corsetti v. Rapelje*, No. 13-cv-14138, 2013 WL 6546011, at *3 (E.D. Mich. Dec. 13, 2013) (relying upon *Jago* to dismiss a petitioner's § 2254 petition challenging the Parole Board's decision to suspend its decision to release petitioner on parole). Michigan law provides that "a parole order may be rescinded at the discretion of the parole board for cause before the prisoner is released on parole." *See* Mich. Comp. Laws § 791.236(2). Moreover, "nothing in Michigan's statutes or regulations limits the Board's discretion during the period between selection or announcement of a parole date and an inmate's actual release on parole." *Hughes v. White*, No. 02-CV-73957-DT, 2003 WL 21911216, at *3 (E.D. Mich. July 30, 2003).

8

Under this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *See Greenholtz*, 442 U.S. at 11. "A constitutionally significant change of status occurs only after the prisoner has experienced rather than merely expected the liberty of actual release on parole from physical custody." *Hughes*, 2003 WL 21911216, at *4. Plaintiff simply did not have "a sufficient liberty interest in his future parole release to be entitled to due process in his parole release proceedings." *Sharp v. Leonard*, 611 F.2d 136, 137 (6th Cir. 1979). Even if Defendants' actions somehow interfered with Plaintiff's anticipated parole, that interference does not implicate the protections of the Due Process Clause. Accordingly, Plaintiff's Fourteenth Amendment procedural due process claims concerning interference with his parole will be dismissed.

Plaintiff also contends that his receipt of a misconduct ticket for fighting violated his Fourteenth Amendment procedural due process rights. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in

9

itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

First, Plaintiff has not—and cannot—allege that any misconduct conviction he received as a result of the fighting ticket resulted in a deprivation that inevitably affected the duration of his sentence. Plaintiff is incarcerated for crimes committed in 2010. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=732012 (last visited May 27, 2025). The MDOC reward for serving time "misconduct free" has changed significantly over the last 25 years. For years, inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1, 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34.

Here, Plaintiff can receive disciplinary time with regard to his indeterminate sentences for all of his convictions. Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *See Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

10

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. In fact, Plaintiff does not allege any facts regarding what, if any, sanctions he received as a result of the misconduct conviction. Plaintiff mentions only that his conditional grant of parole was rescinded; however, as discussed *supra*, Plaintiff has no liberty interest in release until he has served his maximum sentence.

Per MDOC policy, fighting is a class I misconduct. *See* MDOC Policy Directive 03.03.105, Attach. A. The maximum sanctions for a class I misconduct are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. *See id.* Attach. D.

The most significant hardship that can result from a class I misconduct conviction is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not

11

atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, any sanctions received by Plaintiff as a result of the misconduct simply do not implicate a liberty interest. Plaintiff does not allege that he was placed in segregation, but if confinement in segregation does not implicate a protected liberty interest, it follows that any loss of privileges Plaintiff may have experienced did not implicate such an interest. *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment).

Accordingly, for all of the foregoing reasons, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed.

### b. Substantive Due Process

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the

12

conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts set forth in Plaintiff's complaint do not rise to the level of a substantive due process violation. With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff, however, has not alleged any facts from which the Court could infer that any of the named Defendants were responsible for issuing the misconduct report to Plaintiff or that any of the named Defendants framed him. Moreover, the revocation of Plaintiff's conditional grant of parole does not rise to the sort of egregious conduct that would support a substantive due process claim. Accordingly, Plaintiff's Fourteenth Amendment substantive due process claims will be dismissed.

### III.    "Motion for Immediate Consideration" (ECF No. 3)

Plaintiff has filed what he calls a "motion for immediate consideration." (ECF No. 3.) Plaintiff seeks immediate relief in the form of a transfer to the Macomb Correctional Facility. (*Id.*, PageID.26.) Plaintiff contends that he is being retaliated against by MDOC employees as a result of his lawsuits. (*Id.*) Plaintiff avers that employees have taken his property, are not filing his grievances, and are tampering with his food. (*Id.*) In light of Plaintiff's request for immediate relief in the form of a transfer, the Court has construed his motion as a motion for preliminary injunctive relief.

As an initial matter, as discussed *supra*, Plaintiff's complaint concerns Defendants' alleged failure to protect him from harm in the form of an assault while Plaintiff was incarcerated at URF. Plaintiff is now incarcerated at LMF. For the same reason that Plaintiff's claims for declaratory

and injunctive relief are moot, Plaintiff's request for preliminary injunctive relief in the from of a transfer is moot because Plaintiff is no longer incarcerated at URF. *See Kensu*, 87 F.3d at 175.

In any event, preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether a plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d

14

432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). Here, Plaintiff has not made such a showing. In any event, a party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in his complaint. *Colvin v. Caruso,* 605 F.3d 282, 299–300 (6th Cir. 2010). A motion for preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable. Simply put, a plaintiff is not entitled to a preliminary injunction on claims not pending in the complaint. *Ball v. Famiglio,* 396 F. App'x 836, 837 (3d Cir. 2010). Here, Plaintiff's request for a preliminary injunction and his reasons for seeking such relief are simply unrelated to the subject matter of his complaint.

Additionally, a plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *Overstreet*, 305 F.3d at 578. Plaintiff has failed to assert factors that establish that he will suffer irreparable harm in the absence of an injunction.

Finally, in the context of a motion impacting matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any

interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *Glover*, 855 F.2d at 286–87. Here, Plaintiff has not made that showing. Accordingly, for the foregoing reasons, Plaintiff's "motion for immediate consideration," construed as a motion for preliminary injunctive relief, will be denied.

### **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): Plaintiff's claims for declaratory and injunctive relief, as well as his Fourteenth Amendment due process claims. Plaintiff's Eighth Amendment claims for damages against Defendants remain in the case. The Court will also deny Plaintiff's "motion for immediate consideration" (ECF No. 3), which the Court has construed as a motion for preliminary injunctive relief.

An order consistent with this opinion will be entered.

Dated:   June 18, 2025                              /s/ Paul L. Maloney
                                                                              Paul L. Maloney
                                                                              United States District Judge